IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2003 Session

## JOSEPH D. TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15223     Charles Lee, Judge**

---

**No. M2003-00138-CCA-R3-PC - Filed February 20, 2004**

---

Petitioner, Joseph Taylor, filed a petition for post-conviction relief which was subsequently amended. Following an evidentiary hearing, the trial court dismissed the petition. On appeal, Petitioner argues that his trial counsel rendered ineffective assistance of counsel because he (1) failed to adequately meet with Petitioner prior to trial; (2) failed to interview and call certain witnesses to testify; (3) failed to request a jury instruction on assault as a lesser-included offense of attempted rape; and (4) failed to object to the classification of Petitioner as a career offender when the trial court sentenced Petitioner for attempted rape. Petitioner also alleges that his appellate counsel rendered ineffective assistance of counsel when he failed to appeal the classification of Petitioner as a career offender for purposes of sentencing. After a thorough review of the record, the judgment of the trial court is affirmed in part and reversed in part, and this case is remanded to the trial court for a new sentencing hearing in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court**
**Affirmed in Part; Reversed in Part; Remanded for New Sentencing Hearing**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellant, Joseph D. Taylor.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I. Background

Following a jury trial, Petitioner was convicted of attempt to commit sexual battery, attempt to commit rape, and aggravated kidnapping. The facts surrounding Petitioner's convictions were

summarized by this Court in Petitioner's direct appeal in *State v. Taylor*, 63 S.W.3d 400 (Tenn. Crim. App. 2001) as follows:

Defendant met the victim, thirteen-year-old A.S., while he lived next door to the victim's family on Park Street in Lewisburg, Tennessee. (The minor victim will be referred to herein by his initials.) On May 16, 1999, approximately three to four weeks after Defendant moved to another house in the same neighborhood, A.S. rode his bicycle past Defendant's new address. He stopped to say "Hi" when he noticed Defendant working on his car in the driveway. Defendant informed A.S. that he was planning to drive to Shelbyville to visit a friend and, if A.S. came back at 11:00 a.m., he could accompany Defendant on the trip. Defendant also told A.S. that his parents did not need to know of their plan.

In the meantime, A.S. went to look for his sixteen-year-old brother, Timothy, who was fishing in a nearby creek. Because Timothy wore a watch, A.S. asked him to keep him informed of the time so A.S. could return to Defendant's house at 11:00. Timothy did not comply with his request. When A.S. arrived at Defendant's house twenty minutes late, Defendant told him the trip was off and invited him into the house to watch television instead. A.S. accepted.

The television was in Defendant's bedroom, and they started watching a scary program. Initially, A.S. sat on one end of Defendant's bed and Defendant sat on the other. Approximately fifteen minutes later, Defendant started "scooting" closer to A.S. Eventually, when they were sitting only inches apart, Defendant placed his hand on A.S.'s belly near his belly button and began to rub it in a circular motion. Defendant told A.S. that "he liked girls, but he liked boys, too" and that, "if [A.S.] f---ed him, he would buy [A.S.] anything." A.S. started to cry. He told Defendant he "wasn't like that" and pushed him away. A.S. was scared at this point and decided to leave. But before he could take more than five steps toward the door, Defendant picked him up by the waist with both arms and "slammed" him onto the bed. A.S. landed on his back and his head hit the wall. Defendant pinned A.S. down with his body and told him to stop crying--he "didn't have to be scared."

A.S. was unable to move his arms with Defendant on top of him, and he did not stop crying even after Defendant ordered him to stop. When Defendant told A.S. that "he might as well f--- [him] now because he knowed [sic] that [A.S.] was going to go home and tell mom and dad," A.S. started crying even harder. Defendant let him sit up then, but stayed right beside him on the bed. They were sitting only inches apart, and the television was still on. When Defendant turned his head to look at it, A.S. saw his chance for escape and "took off running" as fast as he could. Once out the front door, A.S. leaped onto his bicycle and rode away. He testified that he did not look back and was unaware whether or not Defendant chased him.

-2-

After A.S. arrived home, he immediately found his brother, Timothy, who was next door at the neighbor's house. Timothy testified that A.S. was crying and upset. After A.S. told him that Defendant "tried to rape him," Timothy made A.S. tell their father, James, what happened. James took A.S. with him to find Defendant. Shortly thereafter, they discovered Defendant as they were driving to his house. Defendant was headed in the opposite direction and smiled at them as he passed. By the time James turned the car around, Defendant was gone. James proceeded to the police department and reported the incident. The police arrested Defendant early the next day, between 2:00 and 3:00 a.m.

At trial, A.S. further testified that he had visited Defendant on other occasions but Timothy was ordinarily with him. They usually only stayed fifteen or twenty minutes and watched television or talked about cars and baseball cards. They often sat in Defendant's bedroom because it was the only room with a television. A.S. testified that, prior to this incident, Defendant had never given him a reason to believe that he and Defendant were not friends.

Beth Rhoton, an investigator with the Lewisburg Police Department, testified that she usually worked cases where sex abuse was involved. Rhoton interviewed A.S. on May 16, 1999, between approximately 5:00 and 6:30 p.m. A.S. was still shaking, and appeared very nervous and scared. On cross- examination, Rhoton testified that A.S. did not require medical treatment.

*Taylor*, 63 S.W.3d at 404-05.

Following a sentencing hearing, the trial court sentenced Petitioner to eleven months, twenty-nine days for his attempted sexual battery conviction, fifteen years as a career offender for his attempted rape conviction, and twelve years as a violent 100% Range I offender for his aggravated kidnapping conviction. The trial court ordered that Petitioner's conviction for attempted sexual battery be merged with his conviction for attempted rape, and his conviction for attempted rape be merged with his conviction for aggravated kidnapping. On appeal, Petitioner argued that the evidence was insufficient to support his convictions on all three offenses. In addition, Petitioner challenged his sentence, arguing that the trial court failed to give proper consideration to the mitigating factor provided in Tennessee Code Annotated section 39-13-304(b)(2), and that the trial court erred in sentencing him as a career offender for the attempted rape conviction because the State failed to provide adequate notice that it was seeking an enhanced punishment. The State appealed the merger of Petitioner's convictions into a single conviction for aggravated kidnapping and requested that this Court reinstate Petitioner's separate convictions and order consecutive sentencing.

On direct appeal, this Court concluded that the evidence was sufficient to support Petitioner's three convictions. Based on the facts presented in the case, however, we concluded that dual convictions for attempted sexual battery and attempted rape could not be sustained and reversed and dismissed Petitioner's conviction for attempted sexual battery. We also concluded that Petitioner's

-3-

offense of aggravated kidnapping was incidental to the offense of attempt to commit rape under *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). Therefore, pursuant to *Anthony*, we reversed the trial court's merger of Petitioner's conviction for attempted rape into his conviction for aggravated kidnapping; reversed and dismissed the aggravated kidnapping conviction; and reinstated Petitioner's conviction and sentence for attempted rape. *Taylor*, 63 S.W.3d at 403-04.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified that his counsel only met with him three times prior to trial, and none of the meetings lasted more than thirty minutes. Petitioner conceded that his counsel discussed the elements of the charged offenses with him, as well as the potential sentencing ranges and sentences, and that thirty minutes was sufficient time to explain his side of the story to his counsel. Petitioner said, however, that his counsel never discussed possible defenses or the State's proof with him, and consequently all of the State's evidence at trial was a "surprise." Petitioner said that his trial counsel should have filed a motion for a bill of particulars so that they could discover what evidence the State had. Petitioner agreed that he was present at the preliminary hearing and conceded that his counsel adequately cross-examined the victim at the hearing. Petitioner also could not say what defense should have been raised other than Petitioner's assertion that he did not commit the charged offenses.

Petitioner said that his counsel should have called his neighbor as a witness. Petitioner said that the neighbor would have testified that the victim was not upset or in a rush when he left Petitioner's house. Petitioner said his counsel made a unilateral decision not to call the neighbor, as well as Petitioner's mother and sister, as witnesses. Petitioner explained that his mother would have testified that Petitioner was in the house, not working on his car, the first time the victim came by, and his sister would have testified that Petitioner had a good relationship with the victim's family. On cross-examination, Petitioner admitted that his mother was at church when the offenses occurred, and that his sister's potential testimony had no bearing on Petitioner's guilt or innocence. None of these witnesses testified at Petitioner's post-conviction hearing.

Petitioner also said that he chose not to testify because he was afraid the State would disclose his prior convictions during cross-examination. Petitioner said that he did not remember the court's ruling that his prior convictions could not be used to impeach him if he testified. Petitioner stated that he requested a charge to the jury on the lesser-included offense of assault, but his counsel refused to request such an instruction.

Petitioner's counsel testified that he spent at least ten to twelve hours with Petitioner prior to the trial. He went over Petitioner's version of the incident a couple of times, and the investigator also talked with Petitioner. Counsel stated that he discussed the State's proof with Petitioner. The investigator spoke with Petitioner's neighbor, but the neighbor said that he did not know anything about the events that occurred on the day of the offense. Counsel said that Petitioner's mother was not present when the victim came over the second time, and whether or not Petitioner was in the house or in the yard when the victim stopped by the first time was not particularly relevant. Counsel

also said that Petitioner's sister's observation that Petitioner and the victim were close and spent a lot of time together was not beneficial to Petitioner's defense.

Counsel said that Petitioner's only defense was that he did not commit the offense, and he did not believe any other defense was available. It was also counsel's belief that the evidence did not support an instruction as to the lesser-included offense of assault. In addition, counsel felt that a motion for a bill of particulars was unnecessary because there was no question as to the time and location of the charged offenses, or how the offenses allegedly occurred. Counsel confirmed that both he and the trial court informed Petitioner that his prior convictions could not be used to impeach him should he elect to testify at trial.

At the conclusion of the post-conviction hearing, the trial court dismissed Petitioner's petition. The trial court specifically accredited the testimony of Petitioner's counsel concerning his preparation for trial and his meetings with Petitioner and resolved any inconsistencies in favor of the State. The trial court concluded that counsel's performance exceeded the standards expected of attorneys in criminal cases. The trial court found that counsel interviewed all potential witnesses and made a tactical decision not to called the neighbor and Petitioner's mother and sister to testify. The trial court also concluded that Petitioner failed to show that he was prejudiced by the absence of these witnesses at trial. The trial court found that Petitioner failed to show that the results of his trial would have been any different had the trial court instructed the jury as to the offense of assault as a lesser included offense of attempted rape.

Prior to Petitioner's post-conviction hearing, the State stipulated that Petitioner's prior convictions consisted of six Class E felonies and one Class D felony which removed him from consideration as a career offender for the attempted rape conviction. The trial court, however, concluded that the issue of Petitioner's sentencing as a career offender had been previously determined on Petitioner's direct appeal. The trial court granted the State's motion to dismiss Petitioner's claim that he had been erroneously sentenced as a career offender.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

In his appeal, Petitioner alleges that his trial and appellate counsel rendered ineffective assistance of counsel. A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court may not re-weigh or re-evaluate these findings nor substitute its inferences for those of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court,

and not this Court. *Honeycutt*, 54 S.W.3d at 766-67. However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## B. Inadequate Representation

Petitioner argues that the time his trial counsel spent with him prior to trial was insufficient to adequately prepare a defense or to inform Petitioner of the charges against him. Petitioner also claims that his trial counsel failed to consult with him about potential witnesses whose testimony may have been beneficial to Petitioner's defense. When a petitioner claims that his counsel's representation was inadequate, he or she "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064; *Burns*, 6 S.W.3d at 462. In our review, we must extend to counsel "a strong presumption that his or her conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The trial court found that counsel's consultation with Petitioner prior to trial as well as his preparation for trial far exceeded the range of conduct expected of defense attorneys as outlined by our supreme court in *Baxter*. Petitioner's description of counsel's activities prior to trial varied from those portrayed by counsel. The trial court, however, specifically accredited the testimony of counsel

and resolved all inconsistencies in the State's favor. We conclude that the evidence does not preponderate against the trial court's finding that counsel's assistance was not ineffective.

Petitioner also contends that his counsel failed to consult with him as to whether Petitioner's neighbor should have been called to testify for the defense. He points out that trial counsel has a duty to call witnesses who may be of benefit to the defense citing *State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991).

While an attorney should consult with his client as often as necessary, tactical and strategic decisions as to how the case should be presented and managed are generally left to the defendant's counsel. *See Faretta v. California*, 422 U.S. 806, 820, 95 S. Ct. 2525, 2534, 45 L. Ed. 2d 562 (1975); *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Baxter*, 523 S.W.2d at 932-33 (quoting *United States v. DeCoster*, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)). Our deference to counsel's tactical decisions, however, applies only if "the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard*, 629 S.W.2d at 9; *DeCosta*, 487 F.2d at 1201).

Petitioner contends that his neighbor could have testified that the victim left Petitioner's house calmly rather than in a hurried manner as portrayed by the State. Counsel testified that the investigator interviewed the neighbor who said that he did not see anything on the day of the incident. Based on this interview, counsel determined that the neighbor could not provide any evidence that would be beneficial to Petitioner's defense.

The trial court accredited the testimony of Petitioner's counsel concerning the potential testimony, or lack thereof, of this witness. Moreover, the trial court concluded, and we agree, that Petitioner failed to show that he was prejudiced by the absence of this witness at trial. In order to support his claim that trial counsel failed to call certain witnesses to Petitioner's detriment, Petitioner must show, through the witness' testimony at the evidentiary hearing, that he would have testified favorably and provided critical evidence in support of Petitioner's defense. *Black*, 794 S.W.2d at 757. Without any proof at the post-conviction hearing as to the testimony the witness would have offered, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to call his neighbor to testify on his behalf. *Id.* Petitioner is not entitled to relief on this issue.

### C. Failure to Request a Charge on Lesser-Included Offenses

Although Petitioner concedes that a jury instruction on lesser-included offenses was discussed by his trial counsel and the trial court prior to the trial court's charge to the jury, Petitioner contends that his trial counsel was ineffective for not making a formal request for an instruction on assault as a lesser included-offense of attempted rape. Counsel testified that he did not press the issue because he did not think the evidence would support such an instruction. Following the discussion in which counsel raised the issue of lesser-included offenses, the trial court, albeit tacitly, declined to charge the jury on any offenses other than the charged offenses.

The post-conviction court found that Petitioner failed to show that he was prejudiced by trial counsel's failure to pursue a charge on lesser-included offenses. Although conceding that such an instruction might have been required, the post-conviction court concluded that the error, if any, was harmless beyond a reasonable doubt because the jury convicted Petitioner of both attempted rape and attempted sexual battery. *See State v. Williams*, 977 S.W.2d 101 (Tenn. 1998).

In his brief, Petitioner limits his argument to trial counsel's failure to more aggressively press for an instruction on lesser-included offenses. The duty to instruct on applicable lesser-included offenses, however, resides with the trial court regardless of whether or not defense counsel makes such a request. Tenn. Code Ann. § 40-18-110 (1997); *State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999). The trial court indicated to counsel that it was disinclined to consider charging the jury on any offense other than those charged. Petitioner has failed to show that a more aggressive request by trial counsel for a charge on assault as a lesser-included offense would have swayed the trial court to provide such an instruction.

As this Court has previously noted, "[a]ny deficiency of performance in failing to press the instruction issue [when the trial court refuses to give the requested instruction] would have to be attributed to appellate counsel." *Yasmond Fenderson v. State*, No. E2001-01088-CCA-R3-PC, 2002 WL 832205 (Tenn. Crim. App., Knoxville, May 2, 2002), *perm. to appeal denied* (Tenn. 2002). Petitioner did not contend that his appellate counsel was ineffective for failing to appeal the trial court's instructions to the jury, nor did Petitioner offer proof at the post-conviction hearing to establish any deficiencies in the performance of his appellate counsel. Petitioner is not entitled to relief on this issue.

## IV. Career Offender Status

Petitioner argues that he was denied effective assistance of counsel at his sentencing hearing when his trial counsel failed to object to Petitioner's classification as a career offender for purposes of determining his sentence. Petitioner also argues that appellate counsel was ineffective for failing to raise Petitioner's improper offender classification on appeal.

A "career offender" is a defendant who has received "any combination of six (6) or more Class A, B, or C prior felony convictions, and the defendant's conviction offense is a Class A, B, or C felony." Tenn. Code Ann. § 40-35-108(a)(1). If a defendant is determined beyond a reasonable doubt to be a career offender, the defendant's sentence is set at the maximum term within the applicable Range III. *Id.* § -108(c). The release eligibility for a career offender does not occur until after service of 60% of the imposed sentence less any sentence credits. *Id.* § -501(f).

A "persistent offender," as relevant here, is a defendant who has received "[a]ny combination of five or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." *Id.* § -107(a)(1). If a defendant is determined to be a persistent offender, he or she is sentenced within Range III. *Id.* § -107(c). The release eligibility for

a Range III, persistent offender, occurs after service of 45% of the imposed sentence less any sentence credits. *Id*. § -501(e).

Petitioner was convicted of attempted rape, a Class C felony. At the post-conviction hearing, the State stipulated that Petitioner's prior convictions consisted of six Class E felonies and one Class D felony. Petitioner's prior felony convictions are clearly inadequate to support a finding that Petitioner is a career offender as defined in section 40-35-108(a)(1). These convictions are, however, sufficient to support a persistent offender classification under section 40-35-107(a)(1).

The State conceded in its brief that the offender classification assigned to Petitioner was improper thereby implicitly conceding the ineffectiveness of counsel in failing to object to the offender classification used by the trial court to determine Petitioner's sentence for attempted rape.

A defendant is entitled to the assistance of an attorney whose role includes bringing "such skill and knowledge as will render the trial a reliable adversarial testing process" and the proceedings fair. *Strickland*, 466 U.S. at 685, 688, 104 S. Ct. at 2063, 2065. Trial counsel's conduct is measured by an objective standard of reasonableness, and the petitioner bears the burden of proving that his counsel's conduct fell outside "the wide range of professionally competent assistance." *Id*. at 688, 699, 104 S. Ct. at 2064, 2066. Among counsel's duties is the requirement that counsel conduct proper legal investigation. *Baxter*, 523 S.W.2d at 933 (quoting *DeCoster*, 487 F.2d at 1203-04.) "[E]ffective counsel must be aware of the possible punishment applicable to his or her client." *Dean v. State*, 59 S.W.3d 663, 668 (Tenn. 2001). We conclude that the conduct of Petitioner's trial counsel in failing to ensure that Petitioner was sentenced in accordance with statutory guidelines fell below the range of competence demanded of attorneys in criminal cases. *See id.* (trial counsel's failure to object to or appeal the improper jury instruction on the range of the defendant's punishment constituted ineffective assistance); *see also Henley,* 960 S.W.2d at 579 (citing *Baxter*, 523 S.W.2d at 936). Clearly, if trial counsel had objected to Petitioner's classification as a career offender at the sentencing hearing, the trial court would have had the opportunity to correctly sentence Petitioner based on his prior felony record.

Moreover, while appellate counsel is not constitutionally required to raise every conceivable issue on appeal, failure to raise an "obvious and significant issue" such as the one now before us indicates conduct falling outside the reasonable range of competence extended to defense counsel. *See Carpenter v. State*, __ S.W.3d __, 2004 WL 51818, *6 (Tenn. 2004); *Dean*, 59 S.W.3d at 668-69. Once Petitioner established his prior felony record, the trial court was obligated to sentence him in accordance with statutory guidelines. Tenn. Code Ann. §§ 40-35-107(c) and -108(c); Tenn. R. Crim. P. 32(b). It is clear that had appellate counsel raised the issue of Petitioner's improper classification as a career offender based on the inadequacy of his felony convictions, this Court would have remanded the case for a new sentencing hearing. Petitioner has thus satisfied the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 691-92, 104 S. Ct. at 2066-67.

When a petitioner receives ineffective assistance from counsel on an issue pertaining only to sentencing, the extent of the relief available under our post-conviction statutes is to set aside the

sentence and order a new sentencing hearing. *State v. Kenneth S. Griffin*, No. E2000-02471-CCA-R3-CD, 2001 WL 710178, *2 (Tenn. Crim. App., Knoxville, June 25, 2001), *perm. to appeal denied* (Tenn. 2001); *see also Goad v. State,* 938 S.W.2d 363 (Tenn. 1996); *Hartman v. State,* 896 S.W.2d 94 (Tenn. 1995); *Brimme*r *v. State*, 29 S.W.3d 497 (Tenn. Crim. App. 1998).

Tennessee Code Annotated section 40-30-111(a) provides that:

> If a trial court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, including a finding that trial counsel was ineffective on direct appeal, the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part and shall enter an appropriate order and any supplementary orders that may be necessary and proper.

There is nothing in the language of section 40-30-111(a) that prohibits a trial court from ordering a new sentencing hearing when the petitioner is prejudiced by the ineffective assistance of counsel only during the sentencing phase or on appeal as to a sentencing issue, but not during the guilt phase of the trial proceedings. *Cf. Wallace v. State*, 121 S.W.3d 652, 658 (Tenn. 2003) (nothing in the language of section 40-30-111(a) limits the discretion of the trial court in granting a delayed appeal to circumstances where the petitioner was completely denied a direct appeal).

At the post-conviction hearing, the State conceded that Petitioner was improperly classified as a career offender, but argued that this ground for relief had been previously determined on direct appeal and was therefore waived. Tenn. Code Ann. § 40-30-106(g). Although the trial court believed that Petitioner's sentencing issue had "some merit," it granted the State's motion to dismiss this issue as previously determined. We respectfully disagree with the trial court's conclusions.

Petitioner's appellate counsel raised two sentencing issues on appeal, one of which is not relevant to his post-conviction appeal. In his second issue, Petitioner challenged his career offender classification, not because of an inadequate felony record, but under an argument that the State had failed to provide sufficient notice that it intended to seek an enhanced sentence. We concluded that the State's notice was sufficient under Tennessee Code Annotated section 40-35-202(a), and Petitioner failed to show any prejudice from an alleged deficiency in the notice. *Taylor*, 63 S.W.3d at 413. Although this Court implicitly upheld Petitioner's offender classification, we did so only within the context of the issue raised by Petitioner's appellate counsel.

A particular act, error or omission occurring during the course of a trial, however, may raise several distinct issues all related to the same error. For example, the issuance of a search warrant may be challenged as lacking probable cause or because the magistrate failed to comply with Rule 41(c) of the Tennessee Rules of Criminal Procedure. If a defendant challenges only the lack of probable cause on direct appeal, then under the trial court's conclusion in the case *sub judice*, the defendant in our example would not be able to raise an issue as to the ineffectiveness of counsel for failing to challenge the magistrate's failure to comply with Rule 41(c). We do not believe that the reach of the definition of a previously determined issue under section 40-30-106(g) is so broad.

-10-

"A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(g). A full and fair hearing is a proceeding in which the petitioner is able to present proof and argument on the claim. *Carter v. State*, 958 S.W.2d 620, 625 (Tenn. 1997) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Petitioner did not raise, nor did we review, the appropriateness of Petitioner's offender classification based upon a review of his prior criminal record. The proof and argument necessary to sustain Petitioner's contention that he was improperly classified as a career offender based on an insufficient number and grade of prior felony convictions is different from the proof and argument required to address Petitioner's contention that the State's notice to seek an enhanced sentence was deficient. Thus, the issue of improper offender classification has not been previously determined as contemplated by Tennessee Code Annotated section 40-30-106(g).

In its brief, the State requests this Court to remand for a new sentencing hearing for the sole purpose of correcting Petitioner's release eligibility to occur after 45% of the imposed sentence. The trial court, on the other hand, in its order denying Petitioner's petition for post-conviction relief, asked this Court to reinstate all of Petitioner's convictions in the event a new sentencing hearing is granted. The trial court essentially envisions that this action would return Petitioner's case to the status it occupied prior to the original sentencing hearing and subsequent appeal, thereby giving the State the opportunity to choose whether to pursue the aggravated kidnapping, attempted rape, or attempted sexual battery conviction during sentencing.

The doctrine of the law of the case, however, dictates that the decision of the appellate court must be followed by the trial court upon remand. *State v. Carter*, 114 S.W.3d 895, 902 (Tenn. 2003) (citing *State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn. 2000)). "In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Memphis Publishing Co. v. Tennessee Petroleum Underground Storage Tank Board*, 975 S.W.2d 303, 306 (Tenn. 1998). This Court's dismissal of Petitioner's aggravated kidnapping and attempted sexual battery convictions on direct appeal establishes the law of the case and precludes "reinstatement" of Petitioner's convictions for these offenses on remand on Petitioner's post-conviction appeal. We are not setting aside Petitioner's conviction for attempted rape in this post-conviction appeal, only his sentence for the attempted rape conviction.

We also decline to follow the State's suggestion that we remand only for the purpose of correcting Petitioner's eligibility release classification to 45%, leaving the length of his sentence undisturbed at fifteen years. The trial court indicated at the post-conviction hearing that although Petitioner's release eligibility might be reduced on remand, the length of Petitioner's sentence would most likely remain at fifteen years. Nonetheless, we are remanding this matter for a new sentencing hearing during which the length of Petitioner's sentence as well as Petitioner's offender classification should be considered.

Once Petitioner was classified as a career offender, the trial court had no choice but to sentence Petitioner to the maximum sentence in Range III for a Class C felony, or fifteen years.

Tenn. Code Ann. § 40-35-108(c). A persistent offender, on the other hand, is subject to a sentence within Range III, which in this case is between ten and fifteen years. *Id.* § -107(c). The presumptive sentence for a Class C felony is the minimum sentence in the range if there are no enhancement or mitigating factors present. *Id*. § -210(c). The State has the burden of proving any enhancement factors which justify a departure from the minimum sentence. *State v. Gutierrez*, 5 S.W.3d 641, 644 (Tenn. 1999) (citing *State v. Poole*, 945 S.W.2d 93, 100 (Tenn. 1997)). Likewise, applicable mitigating factors, if any, may reduce the enhanced sentence. Tenn. Code Ann. § 40-35-113. On remand, the State must prove the existence of one or more enhancement factors in order to justify a sentence longer than the presumptive minimum sentence of ten years, and Petitioner will have the opportunity to offer any evidence in mitigation of his sentence.

## CONCLUSION

After a careful review of the record, we affirm the judgment of the trial in part and reverse in part and remand for a new sentencing hearing in accordance with this opinion.

_____
THOMAS T. WOODALL, JUDGE